NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| DDRA CAPITAL, INC. and JOHN K. BALDWIN,<br><br>                Plaintiffs,<br><br>v.<br><br>KPMG, LLP,<br><br>                Defendant. | Civ. No. 04-0158<br><br>OPINION |

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter has come before the Court upon the Motions in Limine by Defendant KPMG, LLP ("Defendant") to Prohibit Plaintiffs from Submitting Evidence of Speculative Tax Strategies (ECF No. 386) and to Preclude Evidence and Argument in Support of Taxes, Interest, and Penalties as Damages (ECF No. 390). Plaintiffs DDRA Capital, Inc. and John Baldwin (collectively "Plaintiffs") oppose both Motions. (ECF Nos. 410, 411). The Court has decided these Motions based on the written submissions and oral argument held on January 29, 2018. For the reasons stated below, the Court grants in part and denies in part both Motions.

## BACKGROUND

In 1999, Shawn Scott ("Scott"), the president and sole shareholder of Plaintiff DDRA Capital, Inc. ("DDRA"), and John Baldwin ("Baldwin"), through loans offered by Baldwin's

---

[1] The Hon. Anne E. Thompson, United States District Court Judge for the District of New Jersey, sitting by designation.

1

company Sunset Management, purchased Delta Downs Racetrack ("Delta Downs") in Louisiana for $10 million. In 2001, Scott entered into an agreement to sell Delta Downs for $125 million. Delta Downs was subsequently sold on May 31, 2001, on which DDRA made $74 million in profit, and Baldwin earned a $10 million fee on loans. Seeking to avoid or minimize the substantial taxes that they would incur from this income and capital gains, Plaintiffs sought the advice of various accountants. Carl Hasting, then employed by Defendant, advised Plaintiffs in the purchase of a Short Option Strategy ("SOS"), a tax shelter that had been flagged for disallowance by the IRS pursuant to IRS Notice 2000-44.

Plaintiffs ultimately employed Defendant through an October 22, 2001 engagement letter, which both Plaintiffs signed in November 2001. DDRA paid $3,360,000 and Baldwin paid $1,540,000 to Defendant to execute this strategy. Through a series of transactions involving foreign currency, DDRA's 2001 tax return reflected an alleged loss of $48 million and Baldwin's tax return reflected a $33 million loss, to offset the gains from the sale of Delta Downs. Subsequently, a criminal prosecution was initiated against KPMG for its marketing and sale of illegal tax shelters, like SOS. The IRS offered and Plaintiffs accepted a global voluntary settlement offer. Plaintiffs "paid the taxes the IRS demanded would have been due but for the . . . SOS arithmetic ($8,554,685.00 for Baldwin and $17,121,602.00 for DDRA), plus interest ($1,288,449.96 for Baldwin and $3,328,297.01 for DDRA) and certain penalties ($855,468.50 for Baldwin and $1,712,160.20 for DDRA)." *DDRA Capital, Inc. v. KPMG, LLP*, 2017 WL 3887793, at *2 (3d Cir. Sept. 6, 2017).

On December 7, 2004, Plaintiffs filed the present lawsuit. After progressing through four district judges, Judges Finch, Davis, Lewis, and Lancaster, this case was reassigned to Judge Anne E. Thompson on November 15, 2013. On June 6, 2014, this Court granted summary

judgment in favor of Defendant on all claims. Plaintiffs appealed to the Third Circuit, and on September 6, 2017, the Third Circuit entered an order affirming in part and reversing in part. Plaintiffs' RICO claims which had been ordered to arbitration and Plaintiffs' negligence claim were remanded to this Court. *See id.* at *7–8. After receiving its mandate on October 31, 2017 (ECF No. 383), this Court advised the parties that it was prepared to proceed consistent with the Third Circuit's opinion and that the parties should submit any renewed arguments or supplemental briefs for the Court's consideration (ECF No. 384). In response, both parties submitted a number of motions in limine. This opinion addresses Defendant's Motions in Limine for an Order Prohibiting Plaintiffs from Submitting Evidence of Speculative Tax Strategies (ECF No. 386) and to Preclude Evidence and Argument in Support of Taxes, Interest, and Penalties as Damages (ECF No. 390). Plaintiffs oppose both Motions. (ECF Nos. 410, 411.) On January 29, 2018, this Court heard oral argument in Trenton, New Jersey to address all pending motions in limine. (ECF No. 420.) On January 30, 2018, this Court issued an order as to most of the pretrial motions, but reserved on the Motions regarding speculative tax strategies and taxes, interest, and penalties as damages (ECF Nos. 386, 390). (*See* ECF No. 419.) These Motions are presently before the Court.

## DISCUSSION

### I. Burden of Proof Required for Alternative Tax Strategies

Plaintiffs seek to introduce evidence, specifically through the expert testimony of David Barrett, that they suffered damages measured by avoidable tax losses. Defendant asks the Court to prevent Plaintiffs from presenting evidence of alternative tax strategies because their proposed expert witness can only speculate as to alternative strategies Plaintiffs could or would have successfully employed. (Def.'s Mem. at 1–2, ECF No. 386-1.)

3

Defendant argues that Plaintiffs must present expert testimony which proves by a preponderance of the evidence that an alternative tax strategy would have reduced or eliminated their taxes. (Def.'s Mem. at 2, ECF No. 386-1.) Plaintiffs agree that "reasonable certainty" governs, but they claim that the burden only applies to whether alternative tax strategies existed, not the specific mechanisms and viability of those strategies for these Plaintiffs. (Pls.' Opp'n at 4, ECF No. 411; Tr. 67:12–17, 70:7–14.)[2]

### A. Overview of Civil Burden of Proof

Preponderance of the evidence is the traditional burden of proof borne by the plaintiff in a civil action. *Mack v. Ashlock*, 921 P.2d 1258, 1261 (Nev. 1996).[3] Under this standard, many courts require a plaintiff to prove "that a fact's existence is more likely than not." *Greenwich Collieries v. Dir., Office of Workers' Comp. Progs.*, 990 F.2d 730, 736 (3d Cir. 1993); *see also In re Estate of Bethurem*, 313 P.3d 237, 242 (Nev. 2013); *Am. Elevator Co. v. Briscoe*, 572 P.2d 534, 537 (Nev. 1977) (applying more likely than not standard to negligence pursuant to *res ipsa* theory). Therefore, the law generally regards preponderance and more likely than not as the same standard. *See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) ("The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."'" (internal

---

[2] Citations to the transcript ("Tr.") refer to the transcript of oral argument held before this Court on January 29, 2018.
[3] Nevada law is the applicable, controlling law in this case, as previously agreed upon by all parties. (Op. at 28 n.16, ECF No. 371.)

4

citations omitted) (alterations in original)); *see also* Clifford S. Fishman & Anne T. McKenna, 1 Jones on Evidence § 3:9 (7th ed.).

Hypothetical damages, specifically lost profits in a breach of contract action, typically must be proven to a reasonable certainty. *See, e.g., Hall v. Liberty Mut. Gen. Ins. Co.*, 2017 WL 4349225, at *5 (D. Nev. Sept. 29, 2017); *Glob. ePoint, Inc. v. GTECH Corp.*, 58 F. Supp. 3d 178, 192 (D.R.I. 2014); *Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 429 (D. Md. 2011). The same holds true under Nevada law. *See R & R Int'l, Inc. v. Manzen, LLC*, 2010 WL 3605234, at *9 (S.D. Fl. Sept. 12, 2010) (quoting *Eaton v. J.H., Inc.*, 581 P.2d 14, 16–17 (Nev. 1978)) (noting that under Nevada law, lost profits damages for breach of contract must be proven to a reasonable certainty). In these cases, the plaintiff must "show a history of profitability or the actual existence of future contracts from which lost profits can be calculated with reasonable certainty." *R & R Int'l, Inc.*, 2010 WL 3605234, at *9. "The term 'reasonable certainty' with regard to the determination of damages means only that the fact that there are damages must be more than merely speculative and only requires that the plaintiff meet the usual preponderance burden of proof in a negligence case to prove the existence of damages." 22 Am. Jur. 2d Damages § 341. *Cf. Leizerowski v. E. Freightways, Inc.*, 514 F.2d 487, 490–91 (3d Cir. 1975) (noting Pennsylvania law treats reasonable certainty as a higher standard than preponderance of the evidence). The reasonable certainty formulation of the burden is designed to avoid the recovery of uncertain lost profits. *Hall*, 2017 WL 4349225, at *5.

With these definitions in mind, the Court treats preponderance of the evidence, more likely than not, and reasonable certainty as the same burden of proof. Therefore, the Court also rejects Plaintiffs' argument against the Financial Accounting Standards Board ("FASB")

Interpretation Number 48. (*See* Pls.' Opp'n at 2–3, ECF No. 411; Tr. at 66:23–67:3 (Plaintiffs claiming standard derived from FASB and AICPA).)

### B. Nevada Law on Burdens of Proof

It is well-established "that, where state law provides the rule of decision, the allocation of the burden of proof is a matter of substantive state law." *In re Wettach*, 811 F.3d 99, 105 (3d Cir. 2016). Therefore, because this case is governed by Nevada law, it is important to consider what burden Nevada law places on Plaintiffs. In a Nevada negligence action, the burden of proof does not demand "mathematical exactitude," but the party seeking damages must provide "an evidentiary basis for determining a reasonably accurate amount of damages." *Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co., Inc.*, 784 P.2d 954, 955 (Nev. 1989); *see Frantz v. Johnson*, 999 P.2d 351, 360 (Nev. 2000). Where proof of damages relies on expert testimony, such as that of an economist, testimony is admissible if it "is not speculative but is instead based on facts known to the expert at that time." *Frantz*, 999 P.2d at 360.

### C. Burdens of Proof as Applied to Alternative Tax Strategies

Plaintiffs predicate their damages in part on the claim that "KPMG harmed Plaintiffs by foreclosing their consideration of other viable tax planning opportunities" and thus "lost tax planning and saving opportunities based on alternatives . . . Plaintiffs reasonably could have chosen." (Pls.' Opp'n at 3, ECF No. 411.) In response, Defendant argues that Plaintiffs must prove these alternative strategies to a reasonable certainty, citing breach of contract case law with damages predicated on lost profits. (*See* Def.'s Mem. at 5, ECF No. 386-1.)

Lost profits is an appropriate analogy where damages are measured by hypothetical alternative tax liabilities. Other courts have embraced this analogy and thus require proof of alternative strategies to a reasonable certainty. *See, e.g., Ducote Jax Holdings LLC v. Bradley*,

6

335 F. App'x 392, 401 (5th Cir. 2009) (per curiam) (finding plaintiffs failed to explain an alternative strategy and how it would have alleviated their tax liability); *Eckert Cold Storage v. Behl*, 943 F. Supp. 1230 (E.D. Cal. 1996); *Lien v. McGladrey & Pullen*, 509 N.W.2d 421, 424 (S.D. 1993) (noting plaintiff's expert testified to the exact amount plaintiff would have been able to deduct under an alternative strategy). In a negligence action, the court in *Eckert Cold Storage* required the plaintiff to "establish with 'reasonable certainty' that other investments available at the time would have provided a successful tax shelter, and that they would have placed their money in those investments had [the defendant] not made the misrepresentations." 943 F. Supp. at 1235. Therefore, under the general umbrella of preponderance of the evidence, the Court concludes that the burden of proof for damages in this context is to be informed both by reasonable certainty for hypothetical damages and reasonable accuracy for Nevada negligence actions.

While Nevada does not require mathematical certainty for damages, to only require proof that alternative strategies *existed* to a reasonable certainty or accuracy, gives a standard with too little efficacy and is too imprecise under Nevada law. Without evidence of a viable alternative strategy that Plaintiffs would and could have utilized, there is an inadequate evidentiary basis on which to accurately calculate the loss or damages they allegedly sustained. To rely on these strategies, the trier-of-fact needs sufficient certainty as to their workability. *See Mort Wallin of Lake Tahoe, Inc.*, 784 P.2d at 955.

Finally, as the *Eckert Cold Storage* case observed, a case involving technical and complex issues like tax shelters and investment strategies "requires expert testimony." 943 F. Supp. at 1235, 1235 n.8; *see also Huffey v. Phelps*, 281 P.3d 1183 (Nev. 2009) (Table) (noting that expert testimony may be necessary in negligence cases where an issue is "beyond the

7

knowledge of the average person"). Therefore, Plaintiffs will be permitted to offer experts David Barrett and Timothy McPoland re: alternative tax strategies, with caveats. (Order at 2, ECF No. 419.)

Evidence of alternative tax strategies to prove damages is admissible at trial, by expert testimony, provided that these alternative strategies can be proven by a preponderance of the evidence with reasonable certainty and accuracy, such that they were more likely than not to have reduced Plaintiffs' tax liability. Plaintiffs must meet this burden with respect to the existence of alternative strategies and with respect to whether Plaintiffs would have used these strategies under the circumstances.

## II. Taxes, Penalties, and Interest as Damages

Defendant also moves to preclude evidence of the taxes, interest, and penalties exacted by the IRS as a theory of recovery and evidence of Plaintiffs' damages. (Def.'s Mem. at 1, ECF No. 390-1.) Defendant argues that, as a matter of law, taxes, interest, and penalties are not recoverable as damages. (*Id.*) Conversely, Plaintiffs claim that taxes, interest, and penalties may be recovered where they flow from negligent conduct, and therefore, Plaintiffs are entitled to present this evidence for the jury to make this determination. (Pls.' Opp'n at 4, ECF No. 410.)

### A. Context of Nevada Law

Because Plaintiffs plead state law negligence, Nevada law controls whether Plaintiffs may recover taxes, interest, and penalties as damages. One Nevada state district court case has dealt with this question. In an action by a partnership against KPMG, LLP, the Clark County district court found, "as matter of law, Plaintiffs are not entitled to recover the taxes they paid or owe to the Internal Revenue Service." *Spilsbury v. KPMG, LLP*, No. A479003 (Nev. D. Ct. Clark Cty. Dec. 27, 2006) (conclusion in order regarding defendant's motion for partial summary

8

judgment on damages as taxes and interest paid or owing to the IRS). While this finding is certainly persuasive authority that cannot be ignored in the application of Nevada law, without more analysis or legal discussion, the Court is hesitant to place blind reliance on this order. Therefore, the Court turns next to a fuller discussion of Nevada law on negligence and the damages permissible in a negligence action.

For a Nevada theory of negligence, the plaintiff must establish that the defendant's "negligence was a proximate cause of damage to the [p]laintiff." *Scott v. Equity Grp., Inc.*, 381 P.3d 660 (Nev. 2012) (alteration in original). Proximate cause is "a policy consideration that limits a defendant's liability to foreseeable consequences that have a reasonably close connection with both the defendant's conduct and the harm which that conduct created." *Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792, 797 (Nev. 2004). Traditionally, damages may not be recovered for purely economic loss resulting from unintentional torts, but Nevada courts recognize an exception to the economic loss doctrine, permitting wholly economic damages for cases of professional negligence by accountants, among others. *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86, 89 (Nev. 2009). Economic losses are more representative of damages sounding in "contract law, which is designed to enforce the expectancy interests of the parties," unlike tort damages designed to impose duties of reasonable care to avoid causing harm to others. *Progressive Ins. Co. v. Sacramento Cty. Coach Showcase*, 2009 WL 1871947, at *3 (D. Nev. June 29, 2009); *Sadler v. PacifiCare of Nev.*, 390 P.3d 1264, 1268 (Nev. 2014). The traditional measure of economic loss is "the loss of the benefit of the user's bargain including pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss

of profits." *Progressive Ins. Co.*, 2009 WL 1871947, at *4 (quoting *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000)).

The Nevada Supreme Court has more specifically opined that where a "defendant, for consideration, negligently performs a service, which serves to induce the plaintiff into a failed or flawed transaction with a third party," the out-of-pocket formula, rather than the benefit of the bargain, is the appropriate measure of damages. *Goodrich & Pennington Mortg. Fund, Inc.*, 101 P.3d at 796; *id.* at 797–98 ("The district court properly used an out-of-pocket damage-recovery theory to award [the plaintiff] its damages sustained as a result of [the defendant's] negligence."); *Collins v. Burns*, 741 P.2d 819, 822 (Nev. 1987); *see also Solin v. Domino*, 2009 WL 536052, at *3 (S.D.N.Y. Feb. 25, 2009) ("A victim of negligence and malpractice may recover his out-of-pocket expenses that flow from the wrongful conduct (i.e. indemnity for actual pecuniary loss)."), *aff'd* 501 F. App'x 19 (2d Cir. 2012). The *Goodrich* court used an out-of-pocket formula of "(1) the difference between the value of what the plaintiff received in the induced transaction and the value given for it, and (2) pecuniary loss sustained in consequence of the plaintiff's reliance upon the false representation." 101 P.3d at 796; *see also Hanneman v. Downer*, 871 P.2d 279, 283 (Nev. 1994) (describing out-of-pocket losses as the difference between amount paid and actual value received).

B. <u>Survey of the Law on Taxes, Penalties, and Interest as Damages</u>

Courts and jurisdictions across the country have taken varied approaches with regard to whether taxes, IRS interest, and IRS penalties are recoverable as damages, specifically in a negligence action. *See O'Bryan v. Ashland*, 717 N.W.3d 632, 636–37 (S.D. 2006); *see also Streber v. Hunter*, 221 F.3d 734, 734 n.47 (5th Cir. 2000); *Amato v. KPMG LLC*, 2006 WL 2376245, at *5 (M.D. Pa. Aug. 14, 2006) (noting *O'Bryan* provides an "excellent template for

10

surveying the legal debate about recovery of interest paid to the IRS"); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 348, 384 n.159 (S.D.N.Y. 2004), *amended on recons. on other grounds*, 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004).

Where a plaintiff seeks damages predicated on state law claims, state law again governs recovery of damages. *See, e.g., Streber*, 221 F.3d at 735; *Eckert Cold Storage*, 943 F. Supp. at 1233; *Ronson v. David S. Talesnick, CPA*, 33 F. Supp. 2d 347, 352 (D.N.J. 1999), *superseded by statute Emilien v. Stull Tech. Corp.*, 70 F. App'x 635 (3d Cir. 2003). Courts place particular emphasis on the underlying purpose of said state law or the policy goals behind compensation. *See Streber*, 221 F.3d at 735; *O'Bryan*, 717 N.W.2d at 639. Accordingly, some state negligence laws provide a foundation on which taxes or interest may be recoverable as damages. *See O'Bryan*, 717 N.W.2d at 638–39. In such cases, endeavoring to strike a balance between the underlying goal of the tort laws and avoiding a windfall to a plaintiff, defendants may present evidence of reasons to mitigate or reduce a plaintiff's recovery. *See, e.g., id.* at 639–40 (citing *Ronson*, 640 F. Supp. 2d at 355) (internal citations omitted).

1. *Taxes*

The broadest approach, on which Defendant relies, finds that "taxes, interest, and penalties are not recoverable as damages because they are payments rightfully due to the IRS." *Olenicoff v. UBS AG*, 2012 WL 1192911, at *14 (C.D. Cal. 2012). In other words, taxes are an obligation on the taxpayer by operation of law and the fact that the taxpayer has accrued income, not the result of an accountant's negligence or wrongdoing. *DCD Progs., Ltd. v. Leighton*, 90 F.3d 1442, 1447 (9th Cir. 1996); *see also Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67, 71–72 (N.Y. App. Div. 1990) (finding back taxes are not recoverable as damages because

recovery would place the plaintiff in a position better than if they never engaged in conduct that produced taxable income).

Other courts find that taxes are recoverable damages as a liability caused by the accountant. *See, e.g., Eckert Cold Storage*, 943 F. Supp. at 1234 (finding that under California's negligence statutes, "plaintiffs may be entitled to damages due to the tax liability, if they can prove that this liability was caused by [the accountant's] negligent or fraudulent advice and would not otherwise have been incurred"); *Whitney v. Buttrick*, 376 N.W.2d 274, 281 (Minn. Ct. App. 1985) ("The jury should have been instructed that [the defendant] could be found liable for damages proximately resulting from his negligent misrepresentation that he could structure the sale with no tax."); *Loftin v. QA Invs., LLC & Quellos Grp., LLC*, 2018 WL 691199, at *11 (N.C. Sup. Ct. Feb. 1, 2018) ("North Carolina appears to allow plaintiffs to recover back taxes as damages when tax liability is incurred as a direct result of wrongful conduct, such as professional negligence."). This approach avoids embracing a blanket rule, instead concluding that, based on state law, "whether a taxpayer has been damaged is left to the finder of fact, with the burden of proof on the taxpayer." *O'Bryan*, 717 N.W.2d at 637.

Where taxes may be recoverable, the measure of damages is "the difference between what the taxpayer would have owed absent the negligence, and what they paid because of their accountant's negligence" or improper tax advice. *Lien*, 509 N.W.3d at 426 (describing the measure of damages used in professional negligence cases); *see Thomas v. Cleary*, 768 P.2d 1090, 1091–92 (Alaska 1989). A plaintiff's recovery, however, has its limitations. First, the plaintiffs must "prove that they would have sheltered their income in an alternative available investment." *Eckert Cold Storage*, 943 F. Supp. at 1234. And second, if they can prove they would have avoided some taxes through other shelters or strategies, "they may recover as

12

damages a portion of the tax liability." *Id.* (noting it is unlikely the plaintiffs would have recouped their entire tax liability because the shelter "promised fanciful tax benefits like no other shelter").

### 2. *Interest*

There are three different approaches with respect to interest as damages. Jacob Todres, *Tax Malpractice Damages: A Comprehensive Review of the Elements and Issues*, 1 Tax Law 705, 712 (Spring 2008). Some courts find that, like taxes, interest is not recoverable. Interest owed to the IRS is compensation to the IRS for the taxpayer's "use of money to which they were not entitled," not a penalty for failing to properly pay taxes pursuant to the advice of an accountant or advisor. *DCD Progs., Ltd.*, 90 F.3d at 1451; *Eckert Cold Storage*, 943 F. Supp. at 1235 ("However, interest paid to the I.R.S. represents a payment for the plaintiffs' use of the tax money . . . as such, to the extent that the I.R.S. charges the market rate, interest is not a proper element of damages."). Moreover, to recover interest would result in a windfall to the plaintiff who already received the benefit of using the money and possibly accruing interest on it while not in rightful possession. *See Alpert*, 160 A.D.2d at 72 ("[T]he equities militate in favor of barring recovery of such interest rather than allowing plaintiffs the windfall of both having used the tax monies for seven years and recovering all interest thereon."); *Orsini v. Bratten*, 713 P.2d 791, 794 (Alaska 1986).

As with tax damages, other courts leave the question to the trier of fact, finding "that interest paid to the IRS may be a recoverable element of damages, depending on the facts of the case." *Amato*, 2006 WL 2376245, at *6. This approach considers the interest paid to the IRS to be a consequential damage of the tax liability that was a direct result of the accountant's negligent conduct. *O'Bryan*, 717 N.W.2d at 639; *Dail v. Adamson*, 570 N.E.3d 1167, 1169 (Ill.

13

Ct. App. 1991) ("[T]he interest paid by the plaintiff to the State is readily ascertainable and flows directly from [the defendant's] error.").

Finally, the third approach is a middle ground view where limited interest is recoverable. Courts embracing this approach permit recovery of the "interest differential"—a measure of damages representing the difference between the interest the plaintiffs should have paid the IRS and what they actually owed. *Ducote Jax Holdings LLC*, 335 F. App'x at 400–01 (citing *Streber*, 221 F.3d at 717, 734). As with taxes, this argument depends on the plaintiff's ability to prove an alternative tax strategy he would have used, how it would have alleviated his tax liability, and ultimately the interest assessed on that alternative tax liability. *Id.* at 401.

### 3. *Penalties*

The Court has found little law that addresses whether penalties are recoverable. Unlike interest, penalties are designed to penalize a taxpayer for a failure to file or pay. It follows that where courts permit taxes as damages, so too should a plaintiff be entitled to recover penalties, because the penalty was assessed as a result of a taxpayer's succumbing to an accountant's negligence. *See* Todres, 61 Tax Law at 731 ("[W]hen a tax advisor is negligent, a tax penalty often is suffered by the taxpayer. If the injured taxpayer is to be made whole, such penalties need to be recovered."); *see also Harrell v. Crystal*, 611 N.E.2d 908, 913–14 (Ohio Ct. App. 1992) ("There is also sufficient evidence to enable the jury to conclude that the [plaintiffs] would not have incurred the interest and or penalties assessed by the IRS 'but for' appellants' conduct.").

### C. Application to this Case

#### 1. *Taxes*

At first blush, it seems that the taxes here inevitably flowed from Plaintiffs' sale of Delta Downs. *See DCD Progs., Ltd.*, 90 F.3d at 1447 (finding taxes paid in a securities action are

14

benefit-of-the-bargain damages, not recoverable out-of-pocket losses); *Solin*, 2009 WL 536052, at *3; *Sorenson v. H&R Block, Inc.*, 2002 WL 31194868, at *15 (D. Mass. Aug. 27, 2002), *aff'd* 107 F. App'x 227 (1st Cir. 2004). However, a jury could find that Defendant's conduct caused Plaintiffs to incur their tax liability, by promoting SOS rather than an alternative strategy, such as a § 1031 exchange or enrollment in the Virgin Islands Economic Development Program. (*See* Tr. 55:6–14 (Defendant discussing alternative strategies Plaintiffs plan to present to jury).)

Applying a basis for damages similar to that used by Nevada courts,[4] *Eckert Cold Storage* permitted taxes as damages where the accountant negligently failed to deliver a promised tax shelter. 943 F. Supp. at 1235; *see also Harrell*, 611 N.E.2d at 913 (admitting taxes as damages where the defendant recommended a faulty shelter). To the extent that Plaintiffs can prove that they would have successfully employed an alternative strategy, the damages are the difference between the taxes assessed or paid and what they would have paid under that alternative. 943 F. Supp. at 1235. This approach echoes the out-of-pocket theory of loss. Similar to *Goodrich*, Plaintiffs argue that Defendant's negligently rendered services led Plaintiffs to utilize an illegal tax shelter and incur this liability. *See* 101 P.3d at 796. The out-of-pocket measure applied by the Nevada Supreme Court, designed to put the plaintiff in the position he would have been in had the defendant not acted negligently, *see id.*, is an appropriate corollary. Where Plaintiffs' benefit is a lower tax liability, damages may be analogously measured by the

---

[4] The measure of damages recoverable under the California code section in *Eckert Cold Storage* is the same measure used by Nevada courts. *Compare* 943 F. Supp. at 1233 ("California Civil Code section 3333 sets forth a broad measure of damages generally recoverable in tort actions: 'the measure of damages . . . is the amount which will compensate for all the detriment proximately caused' by the defendant's tortious conduct."), *with Scott*, 381 P.3d 660 (describing negligence damages as those proximately caused by a defendant's conduct).

15

difference between what they could have paid in taxes under an alternative strategy and what the IRS assessed due to the illegal shelter.

On balance, the Court finds ample basis to conclude that taxes may be recovered as damages in this case. Whether or not they are in fact recovered depends first, on whether the jury finds a proximate causal link between Defendant's conduct and the tax liability imposed by the IRS, and second, whether Plaintiffs meet their burden of proof as to alternative tax strategies.

### 2. *Interest*

The Court is persuaded, nonetheless, by the approach taken by most courts and jurisdictions that interest in and of itself is not recoverable. The interest accrued is a result of Plaintiffs holding onto tax money that rightfully belonged to the IRS once it was assessed. Because interest is not considered to be a penalty, *see Eckert Cold Storage*, 943 F. Supp. at 1235, the failure to pay the taxes owed and the choice to retain that money was an act of Plaintiffs' own volition, not a result of Defendant's negligence.

### 3. *Penalties*

The Court finds that some of the penalties may be recoverable. With a viable negligence claim, Plaintiffs may be able to establish that the penalties incurred were proximately caused by Defendant's conduct. *See Harrell*, 611 N.E.2d at 913–14.

Proximate cause under Nevada law, however, limits Plaintiffs' potential recovery. As discussed above, proximate cause is a policy consideration and measure of foreseeability, designed to cut off liability as to a defendant where damages are no longer foreseeable consequences of the defendant's conduct or the result of some intervening force. *See Goodrich & Pennington Mortg. Fund*, 101 P.3d at 797; 22 Am. Jur. 2d Damages § 351 ("Some courts have suggested that the doctrine of avoidable consequences is an extension of the principle of

16

proximate cause: if the plaintiff could have reasonably avoided the damages that resulted, then the activity of the defendant can no longer be considered the proximate cause of those damages."). This theory of causation and limitation on damages is consistent with the "general rule" that "a party cannot recover damages for losses that a reasonable effort could have avoided." *Hanneman*, 871 P.2d at 283.

Here, to the extent Plaintiffs have incurred additional penalties upon entering into the settlement with the IRS, those penalties are a result of Plaintiffs' failure to pay the taxes owed, rather than any allegedly negligent advice Defendant gave as to the SOS tax shelter. It was not foreseeable to Defendant that Plaintiffs would still have yet to pay the IRS these taxes. (*See* Def.'s Mem. at 2, ECF No. 390-1 (noting that DDRA only paid $4.3 million of the taxes owed as of March 2011).) Thus, under a proximate cause theory, Defendant's liability was cut off after any original penalties were assessed by the IRS in the global settlement agreement following its discovery of the SOS transaction.

## CONCLUSION

For the reasons stated above, Defendant's Motions are granted in part and denied in part. Defendant's Motion to Prohibit Plaintiffs from Submitting Evidence of Speculative Tax Strategies (ECF No. 386) is granted to the extent that Plaintiffs must prove the viability of alternative tax strategies with reasonable certainty, by a preponderance of the evidence. This Motion is denied to the extent that Plaintiffs will be permitted to introduce expert testimony of alternative tax strategies in an effort to meet their burden.

Defendant's Motion to Preclude Evidence and Argument in Support of Taxes, Interest, and Penalties as Damages (ECF No. 390) is denied to the extent that evidence of taxes and penalties as damages is admissible for the jury to determine whether they flowed from

17

Defendant's negligence, also dependent on Plaintiffs' ability to meet the burden of proof on alternative tax strategies. This Motion is granted with respect to interest, as Plaintiffs will not be able to present evidence of interest assessed by the IRS as damages.

Date: 2/14/18

ANNE E. THOMPSON, U.S.D.J.